**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 2 4 2015
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept. 24, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 89465-5 |
| | ) | |
| ROLANDO REYES, | ) | EN BANC |
| | ) | |
| Petitioner. | ) | Filed _____ SEP 2 4 2015 _____ |
| | ) | |

FAIRHURST, J.—Rolando Reyes was committed to the custody of the Department of Social and Health Services (DSHS) following a determination that he was a sexually violent predator (SVP). On appeal, Reyes requested a new SVP commitment hearing, arguing that the trial court committed structural error by closing a pretrial hearing in violation of article I, section 10 of the Washington Constitution. The Court of Appeals rejected Reyes' argument and affirmed his commitment. We must answer whether a trial court commits structural error by

*In re Det. of Reyes*, No. 89465-5

closing a pretrial hearing in a civil proceeding without first conducting an *Ishikawa*[1] analysis. It does not, and we affirm.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The legislature has established a civil involuntary commitment system for individuals who are found to be an SVP. *See generally* ch. 71.09 RCW. The statute defines a "sexually violent predator" as a "person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Under the statutory framework, when an offender's sentence is about to expire, the State may file a petition alleging that the offender is an SVP. RCW 71.09.025, .030. If a court or jury finds that the individual is an SVP beyond a reasonable doubt, then he or she is committed to the custody of the DSHS until the offender is rehabilitated and safe to enter the community. RCW 71.09.060(1).

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982).

[2] We also granted review to determine whether Reyes has standing to assert the public's article I, section 10 right to the open administration of justice. However, in supplemental briefing and at oral argument, Reyes conveyed that he no longer sought to raise the public's right. *See* Suppl. Br. of Pet'r at 11 ("Whether a litigant can waive his or her article [I], section 10 right and later assert the public's right is not at issue here."); Wash. Supreme Court oral argument, *In re Det. of Reyes*, No. 89465-5 (May 19, 2015), at 37 min., 33 sec. to 38 min., 4 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. Accordingly, we address only Reyes' own right as a member of the public to assert that his proceeding be open under article I, section 10. We save for the companion case, *State v. Herron*, No. 89571-6 (Wash. Aug. 20, 2015), our discussion of whether a party has standing to raise the public's right.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

While Reyes was incarcerated for a residential burglary, the State petitioned to civilly commit Reyes as an SVP. The petition relied on the residential burglary, which involved a sexual attack, and a prior conviction for child rape as qualifying sexually violent offenses. The petition also alleged that Reyes suffered from several personality disorders, including pedophilia, frotteurism, exhibitionism, and antisocial personality disorder. The State withdrew the petition after Reyes was convicted of committing two additional sexual assaults on custodial staff. Shortly before the end of Reyes' sentence for the new assault convictions, the State refiled its petition.

Before the SVP commitment hearing, Reyes moved to dismiss the petition, arguing that the attorney general lacked authority to file the petition and that the superior court lacked jurisdiction. The court heard oral argument on the motion in chambers. The record does not reflect why the motion was held in chambers or that the court conducted the required procedures for closing the hearing. At the hearing, the assistant attorney general appeared by telephone from her office in Seattle. It does not seem she was aware that the hearing was held in chambers. The judge, the court reporter, and two attorneys representing Reyes were present for the hearing.

The parties first discussed case scheduling and the status of the guardian ad litem. The court then heard brief argument on the motion to dismiss. The court denied the motion to dismiss, noting that jurisdiction was not "a big issue here" and

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that it was "clear" that the attorney general had authority to file the petition. 1 Verbatim Report of Proceedings (VRP) at 16.

The matter proceeded to a bench trial a few days later. The trial court found Reyes to be an SVP and ordered him civilly committed to the Special Commitment Center. The Court of Appeals affirmed the trial court. *In re Det. of Reyes*, 176 Wn. App. 821, 847, 315 P.3d 532 (2013). After staying Reyes' petition pending two other public trial cases, we granted review. *In re Det. of Reyes*, 182 Wn.2d 1001, 342 P.3d 326 (2015).

## II. ANALYSIS

Whether the right to a public trial has been violated is a question of law and thus subject to de novo review. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). The Washington Constitution establishes a right of public access to court proceedings, mandating that "[j]ustice in all cases shall be administered openly." WASH. CONST. art. I, § 10. As such, the trial court may not close a proceeding without inquiring into the five factors set forth in *Ishikawa*, 97 Wn.2d at 37-39, commonly referred to as the *Ishikawa* analysis.[3]

---

[3]The five factors are (1) the proponent of the closure must show a compelling interest, (2) anyone present when the motion is made must be given an opportunity to object, (3) the court and the parties must consider less restrictive alternatives, (4) the court must weigh the competing interests of the proponent of the closure and the public, and (5) the order must be no broader in application or duration than necessary. *Ishikawa*, 97 Wn.2d at 37-39.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We recently adopted a three-step framework to determine whether there has been a violation of the public trial right. *Smith*, 181 Wn.2d at 513. First, we ask whether the public trial right is implicated at all by using the experience and logic test. *Id.* Next, we determine if the courtroom was actually closed. *Id.* Finally, we examine whether the closure was justified. *Id.* "A closure unaccompanied by a[n *Ishikawa*] analysis on the record will almost never be considered justified." *Id.* at 520. In the criminal context, such a closure amounts to structural error that requires automatic reversal. *See State v. Wise*, 176 Wn.2d 1, 16-17, 288 P.3d 1113 (2012).

The parties do not appear to dispute that the public trial right was implicated when the trial court heard argument on Reyes' motion to dismiss, that the hearing was closed, and that the closure was not justified by an *Ishikawa* analysis. Rather, the parties dispute whether the closure constitutes structural error.

Structural error falls under a special category of constitutional error that "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Once we find that a structural error occurred, we presume prejudice and remand for a new trial. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004).

The Court of Appeals determined that the closure did not amount to structural error, relying heavily on our decision in *In re Detention of D.F.F.*, 172 Wn.2d 37,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

256 P.3d 357 (2011). *Reyes*, 176 Wn. App. at 843. In *D.F.F.*, five members of this court concluded that structural error was not applicable in commitment proceedings because such proceedings were civil matters and the doctrine of structural error is strictly limited to criminal trials. 172 Wn.2d at 48 (J.M. Johnson, J., concurring, joined by Chambers, J.), 53 (Madsen, C.J., dissenting, joined by C. Johnson and Fairhurst, JJ.). A principle of law reached by a majority of the court, even in a fractured opinion, is not considered a plurality but rather binding precedent. *Wright v. Terrell*, 162 Wn.2d 192, 195-96, 170 P.3d 570 (2007) (per curiam). Indeed, we have already relied on the rule from *D.F.F.* in subsequent cases. *See Saleemi v. Doctor's Assocs., Inc.*, 176 Wn.2d 368, 385-86, 292 P.3d 108 (2013) (rejecting structural error in the civil arena because "[f]ive justices of this court explicitly rejected the proposition that the concept of 'structural error' had a place outside of criminal law."). Thus, our decision in *D.F.F.* controls, and structural error does not apply to public trial violations outside of the criminal context.

The rationale behind this rule is sound. As recognized by Chief Justice Madsen's dissent in *D.F.F.*, the definition of "structural error" limits itself to criminal cases. 172 Wn.2d at 53. The United States Supreme Court has defined "structural errors" as those that "deprive defendants of 'basic protections' without which 'a *criminal trial* cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *Neder v. United States*, 527 U.S. 1, 8-9, 119

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (emphasis added) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)). The Court went on to explain that without such protections, "'no *criminal punishment* may be regarded as fundamentally fair.'" *Id.* at 9 (emphasis added) (quoting *Rose*, 478 U.S. at 578).

Reyes acknowledges the rule from *D.F.F.* and does not argue that *D.F.F.* is incorrect or harmful. *See City of Federal Way v. Koenig*, 167 Wn.2d 341, 346, 217 P.3d 1172 (2009) (precedent must be incorrect and harmful before it is abandoned). Rather, Reyes argues that structural error analysis should apply to SVP proceedings because such proceedings are quasi-criminal. This is not persuasive. As the State argues, Washington courts do not characterize SVP proceedings as quasi-criminal and have consistently held that the SVP statute is resolutely civil in nature. *See In re Det. of Stout*, 159 Wn.2d 357, 368-69, 150 P.3d 86 (2007) ("[W]e take this opportunity to reiterate that . . . SVP commitment proceedings are *not* criminal proceedings."); *In re Det. of Williams*, 147 Wn.2d 476, 492, 55 P.3d 597 (2002) ("[P]roceedings under the sexually violent predator statute are *civil*—not criminal."); *In re Pers. Restraint of Young*, 122 Wn.2d 1, 19-23, 857 P.2d 989 (1993) (The legislature intended to create a civil scheme when it enacted SVP statutes, and the statutes' actual impact focused on incapacitation and treatment as opposed to punishment.); *In re Det. of Ticeson*, 159 Wn. App. 374, 380-81, 246 P.3d 550 (2011), *abrogated on other grounds by State v. Sublett*, 176 Wn.2d 58, 72, 292 P.3d 715

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(2012) (SVP proceedings differ from criminal trials because the consequences of the former are not equivalent to a criminal conviction and punishment is not the objective).

We have repeatedly relied on this distinction as a basis for declining to extend certain rules from criminal law to SVP proceedings. *See In re Det. of Strand*, 167 Wn.2d 180, 191, 217 P.3d 1159 (2009) (Fifth and Sixth Amendments to the federal constitution do not attach to SVP petitioners because SVP proceedings are civil and not criminal matters.); *Stout*, 159 Wn.2d at 368-69 (SVP petitioners have no Sixth Amendment right to confrontation because SVP proceedings are civil and not criminal matters.); *In re Det. of Petersen*, 138 Wn.2d 70, 91, 980 P.2d 1204 (1999) (Fifth and Sixth Amendments do not attach to SVP petitioners because SVP proceedings are civil and not criminal matters.); *Young*, 122 Wn.2d at 18 (Double jeopardy clause and prohibition against ex post facto laws do not apply to SVP proceedings because SVP proceedings are civil and not criminal matters.). We thus reject Reyes' attempt to label his SVP hearing as quasi-criminal and reaffirm the well-established view that SVP proceedings fall in the civil arena.

Because the concept of structural error does not apply to civil cases, Reyes may not rely on structural error to obtain automatic reversal. Instead, any remedy must be appropriate for the violation. *State v. Momah*, 167 Wn.2d 140, 149-50, 217 P.3d 321 (2009). For example, in *Waller v. Georgia*, 467 U.S. 39, 49-50, 104 S. Ct.

2210, 81 L. Ed. 2d 31 (1984), the United States Supreme Court held that the remedy for a violation of the public trial right at a suppression hearing was a new suppression hearing, not a new trial. Similarly, in discussing the distinction between article I, section 22, which applies only to criminal proceedings, and article I, section 10, a plurality of this court recognized that a new trial would not be the proper remedy absent a violation of article I, section 22. *State v. Beskurt*, 176 Wn.2d 441, 446, 293 P.3d 1159 (2013) (plurality opinion).

Reyes argues that a new SVP commitment hearing is the appropriate remedy for an improper closure of a pretrial hearing. But when the public trial violation occurs at a hearing that is easily separable from the actual trial, the remedy is not a completely new trial. *See Wise*, 176 Wn.2d at 19. Here, the pretrial hearing on Reyes' motion to dismiss did not impact any of the evidence at the SVP commitment hearing, nor did it influence the outcome in any way. Because the hearing on Reyes' pretrial motion to dismiss is easily separable from the remaining proceedings, Reyes is not entitled to a new SVP commitment hearing. As Reyes does not seek any other remedy, we decline to decide the appropriate remedy, if any, in the present case. *See In re Pers. Restraint of Snively*, 180 Wn.2d 28, 32, 320 P.3d 1107 (2014) (per curiam) (declining to grant appropriate remedy when not requested by petitioner).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## III. CONCLUSION

The Court of Appeals correctly determined that the trial court's closure of a motion hearing in a civil case did not constitute structural error because structural error analysis does not apply to civil proceedings. Reyes is not entitled to a new SVP commitment hearing, and we affirm.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Det. of Reyes*, No. 89465-5

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Johnson, J.

Owens, J.

Wiggins, J.

González, J.

Yu, J.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Detention of Reyes (Rolando)*

No. 89465-5

STEPHENS, J. (concurring)—The majority recognizes Rolando Reyes is not entitled to a new commitment hearing based on the improper closure of a pretrial motion hearing because the motion hearing did not in any way impact the conduct of his commitment trial. *See* majority at 9. I agree. I write to emphasize that this holding in no way follows from the majority's discussion of the difference between civil and criminal proceedings generally or its rejection of quasi-criminal protections in sexually violent predator (SVP) proceedings specifically.

The line of cases supporting the majority's ultimate holding has nothing to do with distinguishing criminal and civil cases. Indeed, the majority relies on *criminal* cases, in which violation of the public trial right is well established as structural error. *See Waller v. Georgia*, 467 U.S. 39, 49-50, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984); *State v. Momah*, 167 Wn.2d 140, 149-50, 217 P.3d 321 (2009); *State v. Wise*, 176 Wn.2d 1, 19, 288 P.3d 1113 (2012). Quoting *Waller*, this court recognized early on in our public trial jurisprudence that the remedy for any public trial error "'should be appropriate to the violation.'" *State v. Bone-Club*, 128

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d 254, 262, 906 P.2d 325 (1995) (quoting *Waller*, 467 U.S. at 50). We recently explained that although we have said a public trial violation requires a "'new trial,'" this is a shorthand description, and a lesser remedy is appropriate where an improperly closed proceeding can be separated from the rest of the trial. *State v. Njonge*, 181 Wn.2d 546, 554 n.3, 334 P.3d 1068 (2014) (citing *Waller*, 467 U.S. at 40 and *Bone-Club*, 128 Wn.2d at 262, as contrasting examples of closed pretrial proceedings that could and could not be separated). Reyes's civil commitment should be affirmed because he is not entitled to a new commitment trial, and this is the only remedy he seeks. *See State v. Beskurt*, 176 Wn.2d 441, 446, 457, 293 P.3d 1159 (2013) (lead opinion of C. Johnson, J., and concurring opinion of Stephens, J.) (refusing to remand for lower court to reconsider sealing order when defendant's sole request was for a new trial); *see generally In re Pers. Restraint of Snively*, 180 Wn.2d 28, 32, 320 P.3d 1107 (2014) (per curiam) (refusing to grant remedy not sought by petitioner).

The majority's entire discussion of whether public trial error is structural in the civil context is unnecessary dicta. I believe it is also incomplete in that the relevant question is not simply whether the "structural" label applies only in criminal cases but, more broadly, whether public trial error in any context is so incapable of review for prejudice or so fundamental to the integrity of judicial proceedings that it must be regarded as presumptively reversible. This is an important question that we should carefully consider in a case in which it is briefed and argued. As the majority acknowledges, Reyes does not argue that public trial

-2-

error is structural in the civil context but rather that SVP proceedings should be considered akin to criminal trials. *See* majority at 7.

As for the majority's discussion of the civil nature of SVP proceedings, I believe this is also unnecessary and incomplete. It is unnecessary because, as noted, the holding in this case—that Reyes is not entitled to a new commitment trial—turns on the application of *criminal* public trial cases. It is incomplete because the majority addresses only the line of cases that reject the direct application of certain criminal constitutional provisions to civil SVP proceedings. *See id.* at 8. We have recognized, however, that the significant liberty interest at stake in SVP proceedings implicates heightened due process concerns and sometimes requires application of quasi-criminal protections that do not apply in other civil trials. *See In re Det. of Stout*, 159 Wn.2d 357, 369, 150 P.3d 86 (2007); *In re Det. of Halgren*, 156 Wn.2d 795, 807-08, 132 P.3d 714 (2006). So, confirming that SVP trials are civil in nature does not, for me, answer the question of how we respond to the closure of an SVP proceeding.

I am concerned that the majority's far-ranging discussion will create confusion, especially in its reliance on criminal public trial cases to resolve a matter in which it says criminal cases do not apply. It may also be confusing because the majority implies that Reyes is entitled to *some remedy*, although its rejection of structural error should require an examination of whether Reyes was prejudiced by the closure of the pretrial motion hearing. *See* majority at 9 ("As Reyes does not seek any other remedy, we decline to decide the appropriate

-3-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

remedy, if any, in the present case.") I believe we would do better by saying less. I join in the decision to affirm Reyes's commitment on the sole basis that he is not entitled to a new commitment trial.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 89465-5

GORDON McCLOUD, J. (concurring)—I agree with the majority that the Washington Constitution's right to an open courtroom applied to the oral argument on the pretrial motion at issue here. CONST. art. I, § 10; majority at 5. I also agree with the majority that when the argument on that motion occurred in the judge's chambers, rather than in open court, that constituted a courtroom closure. *Id.* I further agree with the majority that the closure occurred without the required inquiry, proceedings, and findings (under *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 505, 104 S. Ct. 819, 78 L. Ed. 2d 624 (1984); *Seattle Times Co. v. Ishikawa,* 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982); and *Allied Daily Newspapers of Washington v. Eikenberry,* 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993), etc.), so it was unconstitutional.

Finally, I agree with the majority that in *this context,* we have to make a choice about what remedy is appropriate and that reversal is not necessarily the only option. I disagree, however, with the majority's description of what *this context* is. First,

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the majority treats the context of this case as akin to the context presented in *In re Detention of D.F.F.*, 172 Wn.2d 37, 256 P.3d 357 (2011) (plurality opinion), but claims that *D.F.F.* rejected reversal as the remedy for an error of this sort; in contrast, I would hold that the context of this case (closure of a single pretrial motion on which no testimony or evidence is taken) is totally different from the context of *D.F.F.* (closure of a completed trial), and that *D.F.F.* adopted reversal as the remedy for the latter but not for the former. Second, the majority treats the context of this case as akin to the context presented in criminal cases by relying on a federal criminal case, rather than a state civil case, to hold that reversal is not the appropriate remedy here; in contrast, I would hold that the state civil and federal criminal contexts are different and we cannot use one set of cases to determine the appropriate remedy in the other set of cases. The first point is important because *D.F.F.*, a civil commitment case, clearly held that reversal is the remedy for complete closure of a civil commitment trial, and we should not overrule that holding. The second point is important because our prior state criminal cases have clearly held that the remedy for closure of a pretrial motion hearing is reversal, and we should not overrule those holdings. Unfortunately, I think the majority overrules both.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

1. THE MAJORITY EITHER MISSTATES THE HOLDING OF *D.F.F.* OR IMPLICITLY OVERRULES IT

The majority states that *D.F.F.* held that "structural error" analysis does not apply to involuntary commitment proceedings. It is true that only four members of the *D.F.F.* court stated that "structural error" analysis *did* apply to those proceedings and voted to reverse on that basis. And it is also true that three members of the *D.F.F.* court stated that "structural error" analysis *did not* apply to those proceedings and therefore voted to affirm due to failure to prove prejudice. But it is what the other two members of the court said that determines the holding of *D.F.F.* And the other two members of the court actually voted to reverse, not to affirm. They did so for one very specific reason: because civil commitment itself, a significant deprivation of liberty, constituted "sufficient prejudice" that requires the remedy of a new trial. Specifically, Justices J.M. Johnson and Chambers wrote in the pivotal concurrence: "I agree with the dissent that 'structural error' analysis does not apply to the civil context. However, D.F.F., as a respondent committed after a closed hearing, demonstrates sufficient prejudice to warrant relief. Further, I agree with the lead opinion that the release of a transcript to D.F.F. is clearly not a sufficient remedy. Reversal of the commitment order and remand for new proceedings is the appropriate remedy based on the record in this case." *D.F.F.*, 172 Wn.2d at 48-49 (J.M. Johnson, J., concurring in result, joined by Chambers, J.).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

So the first question in this case is what the holding of D.F.F. was. The majority says, "A principle of law reached by a majority of the court, even in a fractured opinion, is not considered a plurality but rather binding precedent." Majority at 6 (citing *Wright v. Terrell*, 162 Wn.2d 192, 195-96, 170 P.3d 570 (2007) (per curiam)). But that is not complete. A principle of law to which a majority of justices agree can constitute binding precedent—even when located in separate opinions—but two additional prerequisites have to be met: (1) that principle of law must be *necessary* for the decision in the case rather than just dicta[1] and (2) that principle of law must be the *narrowest* ground of agreement rather than the broadest.[2]

The narrowest ground on which six members of the *D.F.F.* court agreed was to reverse the commitment and remand for a whole new commitment trial because the entire first trial was closed. Four of those justices called the problem of closure throughout the trial "structural error" and therefore voted to reverse. Two other justices called the problem of courtroom closure throughout the trial nonstructural

---

[1] *State v. Meredith*, 178 Wn.2d 180, 184, 306 P.3d 942 (2013), *cert. denied*, 134 S. Ct. 1329, 188 L. Ed. 2d 339 (2014).

[2] *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532 n.7, 242 P.3d 866 (2010) ("When there is no majority opinion, the holding is *the narrowest* ground upon which a majority agreed. *See State v. Patton*, 167 Wn.2d 379, 391, 219 P.3d 651 (2009) (citing *Davidson v. Hensen*, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998))." (emphasis added)); *see Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

error but "prejudic[ial]" enough to vote for reversal. Those two additional votes were necessary for decision in *D.F.F.*; those two votes narrowed the ground of decision from automatic structural error warranting reversal to error warranting reversal due to the consequence of complete commitment as a result of a completely closed trial. Only three members of the court applied a far more forgiving type of harmless error review, found no harm, and would have affirmed.

Thus, the narrowest (not broadest) holding (not dicta) from *D.F.F.* is closure of an entire civil commitment trial that results in actual commitment[3] violates the constitution and warrants the remedy of reversal. That means that the brief statement in *Saleemi v. Doctor's Associates*,[4] supposedly explaining *D.F.F.*'s holding as "[f]ive justices of this court explicitly rejected the proposition that the concept of 'structural error' had a place outside of criminal law," might be technically correct—but it is misleadingly incomplete. A complete description of *D.F.F.*'s holding would acknowledge that the discussion of structural error was not necessary for the decision because six justices ruled as a holding that when an entire civil commitment trial is

---

[3] As the *D.F.F.* lead opinion noted, "'[C]ommitment is a deprivation of liberty. It is incarceration against one's will, whether it is called "criminal" or "civil."'" 172 Wn.2d at 40 n.2 (quoting *In re Gault*, 387 U.S. 1, 50, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

[4] 176 Wn.2d 368, 385-86, 292 P.3d 108 (2013) (citing *D.F.F.*, 172 Wn.2d at 48-49 (J.M. Johnson, J., concurring in result, joined by Chambers, J.), 53 (Madsen, C.J., dissenting, joined by C. Johnson and Fairhurst, JJ.).

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

closed without an *Ishikawa* inquiry, and the detainee is then committed to a secure facility and deprived of liberty as a result, then "[r]eversal of the commitment order and remand for new proceedings is the appropriate remedy." *D.F.F.*, 172 Wn.2d at 48-49 (J.M. Johnson, J., concurring in result, joined by Chambers, J.).

The majority therefore errs in stating that *D.F.F.* holds not only that "structural error" is inapplicable to commitment trials but also that "harmless error" cannot be proved from courtroom closure in those trials. In fact, harmless error was proved in *D.F.F.* itself. The majority either misstates the holding of *D.F.F.* or implicitly overrules it.

2. *D.F.F.*'S ACTUAL HOLDING—THAT REVERSAL IS THE REMEDY FOR COURTROOM CLOSURE IN A CIVIL COMMITMENT CASE ONLY WHEN THE COMMITMENT IS A RESULT OF THE CLOSED PROCEEDING—RESOLVES THIS CASE; *WALLER*'S REMEDY HOLDING, WHICH *BONE-CLUB* REJECTED, DOES NOT

Still, *D.F.F.* does not dictate the remedy here. *D.F.F.* involved closure of an entire civil commitment trial. This case involves closure of a hearing on a (nonmeritorious) pretrial motion to dismiss, on which no testimony or evidence were offered, in a civil commitment case. *D.F.F.* never held that both unconstitutional closures require the same remedy. In fact, as discussed below, *D.F.F.* limited the reversal remedy to the specific context of a completely closed trial that results in a civil commitment.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The majority (at 8-9) and the concurrence (at 1-2) avoid this analysis. Instead, they rely on a criminal case, *Waller v. Georgia*, 467 U.S. 39, 49-50, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), to hold that courtroom closure errors, in general, can be remedied by something other than reversal. But *Waller* is a federal criminal case, and it imposes a remedy that we explicitly rejected as early as 1995. The *Waller* Court held that the appropriate remedy for unconstitutional courtroom closure of a suppression hearing in a criminal case was remand for a new suppression hearing. In *State v. Bone-Club*, 128 Wn.2d 254, 262, 906 P.2d 325 (1995), a state criminal case decided under the state constitution involving closure of another pretrial suppression hearing, we explicitly rejected the remedy of just a new suppression hearing. We recognized that that was the remedy that the State sought and that the United States Supreme Court had adopted. But we took a different path when faced with the exact same situation, that is, a closed suppression hearing that would require new testimony that might differ at a new hearing. We chose the remedy of complete reversal of the conviction instead.

Thus, both the majority and the concurrence err in relying on *Waller* to preclude reversal as a remedy in this case. *Waller*—a federal criminal case whose limited remedy we declined to follow in *Bone-Club*—is neither controlling nor

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

persuasive authority on the proper remedy for courtroom closure, in violation of the state constitution, during a pretrial motion hearing in a civil commitment case.

Nevertheless, there is an important distinction between this case and *D.F.F.*. In *D.F.F.*, the entire trial was closed. In this case, a pretrial motion to dismiss was closed. In the criminal context, our court has held that both errors—closure of the trial and closure of a pretrial motion—warrant the remedy of reversal. *E.g.*, *Bone-Club*, 128 Wn.2d 254; *State v. Easterling*, 157 Wn.2d 167, 181, 137 P.3d 825 (2006).

But the pivotal concurrence in *D.F.F.* said something different for the civil commitment context. That concurrence stated—and *held*—that the detainee proved "sufficient prejudice" because he was "committed after a closed hearing." *D.F.F.*, 172 Wn.2d at 48. I read that as holding that reversal is required for courtroom closure throughout a civil commitment trial because of the causal nexus between the closed trial and the resulting civil commitment. In other words, the two concurring justices in *D.F.F.* found prejudice because D.F.F. was committed *as a result of* the trial, which was closed from beginning to end.

The prejudice that the two concurring justices found in *D.F.F.*—commitment *as a result of* a completely closed trial—is not present here. Rolando Reyes was committed as a result of an open trial. He was not committed as a result of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

nonmeritorious pretrial motion to dismiss, on which no evidence was presented and no testimony was taken.

## CONCLUSION

I respectfully concur. I am writing separately to emphasize that the analysis in this concurrence—which recognizes a choice of remedies for erroneous courtroom closures of different sorts—is compelled by, and consistent with, our state's civil commitment cases. It is not compelled by, and not consistent with, our state's criminal cases. In fact, the majority's analysis is inconsistent with *D.F.F.*, *Bone-Club*, and *Easterling*.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Det. of Reyes (Rolando)*, No. 89465-5
(Gordon McCloud, J., Concurrence)

Gordon McCloud, J.