IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of: | ) | No. 40684-9-III |
| | ) | |
| D.J.S. | ) | ORDER: (1) GRANTING MOTION |
| | ) | TO REMOVE APPELLANT FATHER'S |
| | ) | FULL NAME FROM OPINION, AND |
| | ) | (2) WITHDRAWING OPINION |
| | ) | |

THE COURT has considered the appellant father's motion to remove his full name from this court's February 12, 2026, opinion; and the record and file herein.

IT IS ORDERED that the motion to remove the father's full name from the opinion is granted.

IT IS FURTHER ORDERED that this court's February 12, 2026, opinion is withdrawn and a new opinion is filed herewith.

PANEL: Judges Murphy, Fearing, and Cooney.

FOR THE COURT:

ROBERT LAWRENCE-BERREY
Chief Judge

**FILED**
**MARCH 31, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of: | ) | No. 40684-9-III |
| | ) | |
| D.J.S.<sup>†</sup> | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

In the Matter of the Guardianship of:  )      No. 40684-9-III
                                        )
D.J.S.†                                 )
                                        )      UNPUBLISHED OPINION
                                        )

MURPHY, J. — "James"[1] is the father of D.J.S. Both are members of the Oglala

Sioux Tribe (Tribe). After a guardianship trial, Meegan Carlson (Carlson) and Robert

Carlson were appointed as D.J.S.'s guardians.

James appeals, arguing his counsel failed to subject the Department of Children,

Youth, and Families (DCYF) to meaningful adversarial testing, constituting structural

error requiring reversal. Alternatively, James claims ineffective assistance of counsel.

---

[†] To protect the privacy interests of the minor child, we use their initials in the case caption and throughout the opinion. Gen. Order 2012-1 of Division III, *In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

[1] In briefing to this court, the parties refer to D.J.S.'s father by the pseudonym "James." We likewise do the same.

James further contends the trial court erred in findings of fact 2.2.1.A, 2.2.1.B, and 2.2.1.C, in that the trial court violated the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, when it ignored the requirement for a tribal resolution to alter placement preferences.[2]

D.J.S. and DCYF respond that structural error argued by James applies only in criminal cases, and James fails to meet the *Strickland*[3] test for ineffective assistance of counsel.

We hold structural error does not apply in this civil case, and James fails to show prejudice under *Strickland*. We therefore affirm.

## FACTS

*Background and procedural history*

D.J.S. was born prematurely in November 2015 with severe medical issues including retinopathy of prematurity, chronic lung disease of prematurity, pulmonary hemorrhage, brain bleed, low white blood cell count, feeding difficulties requiring tubal nutrition, vision problems, sleep issues, chronic ear infections, and ADHD. D.J.S. has

---

[2] James does not designate a section in his briefing to this alleged trial court error, instead arguing ineffective assistance of counsel caused the alleged error. Therefore, James's appeal is solely based on the argument of structural error, or alternatively, ineffective assistance of counsel.

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

lived with Carlson, a registered nurse and licensed foster care parent, since he was 10 weeks old. Carlson manages his care, including trips to Seattle specialists for his numerous medical issues.

DCYF filed a dependency petition in January 2016. D.J.S.'s mother relinquished her parental rights in 2017.[4] James's parental rights were terminated in 2017, reversed on appeal in 2018; terminated again in 2018, remanded in 2020; and terminated in 2020, with reversal in 2021 due to ICWA issues.

In 2023, the Tribe opposed termination or adoption, instead favoring guardianship with the Carlsons.

*Guardianship trial*

At the guardianship trial, social workers testified to D.J.S.'s complex needs and James's history of methamphetamine, heroin, and alcohol abuse, domestic violence, incarceration, mental health issues, unstable housing, and minimal involvement in D.J.S.'s life or services. They also testified to failed efforts to place D.J.S. with relatives, including his aunt who declined to disrupt D.J.S.'s current placement and his half-brother who showed interest only in visitation.

Carlson testified as to her nursing background and D.J.S.'s care.

---

[4] D.J.S.'s mother is not a party to this appeal.

A tribal ICWA specialist, who is also the agency representative for the Tribe, testified as to concerns about James's parenting ability and supported the guardianship with the Carlsons, citing active efforts to engage James that were unsuccessful, failed relative searches, D.J.S.'s medical care needs, and D.J.S.'s bond with the Carlsons. The tribal ICWA specialist further testified that she had authority to alter placement preferences and that she did so prioritizing the Carlsons.

*James's counsel's involvement in trial*

No party gave opening statements. James's counsel cross-examined few witnesses, made no objections, and delivered a brief closing argument citing case law on active efforts.

*The trial court's ruling*

The trial court appointed the Carlsons as guardians, finding the testifying tribal ICWA specialist was authorized to alter preferences, as well as finding good cause to deviate based on D.J.S.'s needs, his bond with the Carlsons, and the lack of suitable relatives.

James now appeals.

No. 40684-9-III
*In re Guardianship of D.J.S.*

ANALYSIS

*Structural error*

James claims structural error under *Cronic* [5] for counsel's failure to engage in an adversarial test of DCYF's case. DCYF and D.J.S. argue *Cronic* applies only to criminal cases. We agree with DCYF and D.J.S.

Indigent parents have a right to effective assistance of counsel in dependency proceedings, including guardianships, as well as under the ICWA, the Washington Indian Child Welfare Act (WICWA), chapter 13.38 RCW, and RCW 13.34.090.

Washington uses *Strickland* and *Moseley* [6] for ineffective assistance of counsel in dependency and termination actions. *In re Matter of the Parental Rights to J.L.A.C.M. and H.A.M.M.*, No. 35902-6-III (Wash. Ct. App. Feb. 28, 2019) (unpublished) https://www.courts.wa.gov/opinions/pdf/359026_unp.pdf. *Strickland* requires a showing of deficient performance and prejudice. 466 U.S. at 687. *Moseley* requires a showing that a meaningful hearing was denied. 34 Wn. App. at 184.

Regardless of this case law, James argues *Cronic* applies. In *Cronic*, the United States Supreme Court discussed circumstances in which there is a "complete denial of counsel." 466 U.S. at 659. *Cronic* excuses the need for a specific showing of prejudice

---

[5] *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).
[6] *Dep't of Soc. & Health Srvs. v. Moseley*, 34 Wn. App. 179, 660 P.2d 315 (1983).

5

when there has been a "denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* Specifically, and relevant to this appeal, prejudice is presumed when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.*; *State v. McCabe*, 25 Wn. App. 2d 456, 462, 523 P.3d 271 (2023). "When assessing whether a complete failure has occurred, the Court indicated that the specific proceeding must be viewed 'as a whole,' not by assessing any claimed ineffectiveness 'at specific points.'" *McCabe*, 25 Wn. App. 2d at 463 (quoting *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).

> [C]ases in which there is a complete failure to subject the prosecution's case to meaningful adversarial testing will be few and far between. Indeed, cases in which this exception has been properly applied are limited to those in which the defendant's counsel was so uninvolved that the attorney may as well have not been present in court at all. *See Lewis v. Zatecky*, 993 F.3d 994, 1006 (7th Cir. 2021) . . . (counsel's only comment during sentencing hearing was "'Judge, I'm going to defer to Mr. Lewis if he has any comments. I don't have anything to add.'") . . . *Burdine v. Johnson*, 262 F.3d 336, 338-39 (5th Cir. 2001) (counsel slept through trial); *Harding v. Davis*, 878 F.2d 1341, 1345 (11th Cir. 1989) (counsel was silent through entire trial); *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984) (counsel refused to participate in trial).

*Id.* However, "allegations of poor performance, no matter how poor, cannot form the basis of a <u>Cronic</u> claim." *McCabe*, 25 Wn. App. 2d at 466.

*Cronic*'s presumption of prejudice for complete failure of adversarial testing applies only to criminal cases. *In re Det. of Reyes*, 184 Wn.2d 340, 348, 358 P.3d 394

(2015) ("[T]he concept of structural error does not apply to civil cases, Reyes may not rely on structural error to obtain automatic reversal.").

This guardianship proceeding is a civil proceeding. Therefore, *Cronic* does not apply. James's reliance on pre-*Reyes* cases like *In re Dependency of V.R.R.*, 134 Wn. App. 573, 141 P.3d 85 (2006), and *In re Welfare of J.M.*, 130 Wn. App. 912, 917-18, 125 P.3d 245 (2005), is unpersuasive. Both *V.R.R.* and *J.M.* use the *Strickland* and *Moseley* standards, not the *Cronic* standard. *V.R.R.*, 134 Wn. App. at 586; *J.M.*, 130 Wn. App. at 922. We decline to extend cases like *V.R.R.* and *J.M.* to include the *Cronic* standard or structural error because both cases were decided prior to *Reyes* and *In re Detention of D.F.F.*, 172 Wn.2d 37, 256 P.3d 357 (2011) (plurality opinion). Both *Reyes* and *D.F.F.* concluded structural error does not apply to civil matters.

Moreover, the ICWA and WICWA require appointed counsel but not a structural error analysis. Even under *Cronic*, counsel's limited cross-examinations and brief closing do not show "complete failure" as counsel was present and did participate, unlike instances of counsel sleeping or being utterly silent. Appellant's Opening Br. at 21.

*Ineffective assistance of counsel*

Alternatively, James argues this court should reverse under the *Strickland* standard. Specifically, he argues his counsel did not object to critical hearsay, which

resulted in prejudice. DCYF and D.J.S. contend that James cannot show prejudice. Again, we agree with DCYF and D.J.S. and find no prejudice under *Strickland*.

To be entitled to relief, James must show both that (1) defense counsel's representation was deficient and (2) the deficient representation was prejudicial. *Strickland*, 466 U.S. at 687. If one prong of the *Strickland* test fails, we need not address the remaining prong. *State v. Crow*, 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019).

In this opinion, we focus on the prejudice prong. Prejudice occurs when, but for counsel's deficient performance, there is a reasonable probability the outcome would have been different. *See State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Here, James cannot show a reasonable probability of a different outcome.

James argues the trial court relied on the hearsay to conclude good cause existed to place D.J.S. with the Carlsons rather than any family member, thus prejudicing him.[7] DCYF and D.J.S. argue that James cannot satisfy the prejudice prong of the *Strickland* standard. James does not meet his burden under the prejudice prong because, regardless of hearsay statements: (1) the Tribe articulated a different order of preference

---

[7] James assigned error, stating, "In violation of ICWA, the court erred in entering Findings [of fact] 2.2.1.A, 2.2.1.B, and 2.2.1.C because these findings ignore ICWA's requirement that the Tribe must enter a resolution before it can alter ICWA's placement preferences." Appellant's Opening Br. at 2. He essentially argues that, but for the hearsay, the trial court would not have made the alleged error in its findings.

through tribal resolution, and (2) the trial court found good cause for placement with the Carlsons.

The ICWA, and its counterpart the WICWA, were enacted to remedy the historical and persistent state-sponsored destruction of native families and communities. *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 157, 471 P.3d 853 (2020). "The acts provide specific protections for Native children in child welfare proceedings and are aimed at preserving the children's relationships with their families, Native communities, and identities." *Id.* Relevant here, the statutes contain mandatory placement preferences for Indian children who are separated from their families that prioritize placement with relatives or tribal members, subject to certain exceptions. 25 U.S.C. § 1915(b); RCW 13.38.180(2). In this case, D.J.S. was placed in a non-Native foster home, which ordinarily would have qualified for a lower placement priority under the ICWA and the WICWA than placement with relatives, absent a statutory exception.

Both statutes, however, include two exceptions to placement priorities. The first exception applies when the child's tribe identifies a different order of preference through tribal resolution. 25 U.S.C. § 1915(c); RCW 13.38.180(4). The second exception applies when the court finds good cause to deviate from the statutory preferences in a given case. 25 U.S.C. § 1915(b); RCW 13.38.180(2).

James argues the Tribe "never provided a resolution that describes its order of placement." Appellant's Opening Br. at 45. Instead, he claims the Tribe's representative "simply stated her preference in this case." Appellant's Opening Br. at 45. James articulates a contention that there must be a *written* resolution produced by the Tribe.

James acknowledges the WICWA does not require a formal resolution. However, James argues the Tribe's designation was improper under the ICWA, which is more protective than the WICWA, and the ICWA only allows a tribe to designate a different order of preference by resolution. He refers to Black's Law Dictionary for the proposition that a resolution is "'a document containing [] an expression or authorization.'" Appellant's Opening Br. at 44-45 (quoting BLACK'S LAW DICTIONARY (12th ed. 2024)).

While James relies on a dictionary definition to support his claim that resolution requires a written instrument, guidelines from the Bureau of Indian Affairs (BIA) promote greater flexibility and respect for tribal autonomy, consistent with the underlying purpose of the ICWA:

> Tribe's order of preference. State agencies should determine if the child's Tribe has established, by resolution, an order of preference different from that specified in ICWA. If so, then apply the Tribe's placement preferences. Otherwise, apply ICWA's placement preferences as set out in § 23.131.
> The statute requires that a Tribal order of preference be established by "resolution." While different *Tribes act through different types of actions and legal instruments, the Department understands that a Tribal "resolution," for this purpose, would be a legally binding statement* by the

10

competent Tribal authority that lays out an objective order of placement preferences.

BUREAU OF INDIAN AFFAIRS, *Guidelines for Implementing the Indian Child Welfare Act*, at 56 (2016), https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf (last visited November 3, 2025) (emphasis added) (boldface omitted). Therefore, a *statement* is legally binding as long as it is done by a competent tribal authority. We are persuaded by the BIA's interpretation of "resolution," instead of relying on a dictionary definition of "resolution" that is not specific to placement preferences.

Here, the tribal ICWA specialist testified without contradiction that she was authorized on behalf of the Tribe to designate a different order of preference. Pursuant to that authority, she designated the Carlsons as the preferred placement. Even if a relative came forward to care for D.J.S., the Tribe's preference would remain the Carlsons because of D.J.S.'s "extreme medical needs" and D.J.S.'s own preference for the Carlsons. Rep. of Proc. (July 5, 2024) at 881.

Moreover, even without alteration, clear and convincing evidence supported good cause: D.J.S.'s preference to stay with the Carlsons, strong foster family bonds, extraordinary medical needs met by Carlson's expertise, and unsuccessful diligent relative searches. The overwhelming evidence favored guardianship with the Carlsons.

11

In its written order, the trial court provided the following finding regarding good cause to place D.J.S. with the Carlsons:

> Even if this court were not to find the requirements of RCW 13.38.180(4) met (which this court does find the Tribe established a different order of tribal preference in this case as testified to by [tribal ICWA specialist]), this court finds by clear and convincing evidence that good cause to continue placement with the proposed guardian(s) exists because the Tribe is in agreement with the placement based on the relationship between the child and the guardians, the Department's efforts to locate a relative or other placement that falls under the placement preferences over time, and the child's extraordinary physical, mental, and emotional needs, Ms. Carlson's special training as a nurse and the Carlson's proven history of meeting D.J.S.'s complex needs as testified to by several witnesses, including [three social workers], Meegan Carlson, and [a medical doctor].

Clerk's Papers at 177 (finding of fact 2.2.1.C).

Here, ample evidence supports the trial court's finding that there was good cause to deviate from placement preferences. D.J.S. expressed clear preference to remain with the Carlsons, which his counsel and the tribal ICWA specialist presented at trial.

James cannot show prejudice, and therefore, does not show ineffective assistance of counsel under *Strickland*.

## Placement findings

The trial court's findings comply with the ICWA. Testimony from the tribal ICWA specialist established tribal authority to alter preferences. Additionally, there independently existed good cause.

No. 40684-9-III
*In re Guardianship of D.J.S.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Cooney, J.

_____
Fearing, J.P.T. [††]

---

[††] George B. Fearing, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).