

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 0 2015
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Aug. 20, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89571-6 |
| | ) | |
| Respondent, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| JERRY ALLEN HERRON, | ) | |
| | ) | Filed _____ AUG 2 0 2015 _____ |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, J.—We must decide whether Jerry Allen Herron waived his right to a public trial and, if so, whether he may later assert the public's right to an open proceeding. The Court of Appeals affirmed Herron's conviction, holding that Herron waived his public trial right and that he lacked standing to assert the rights of the general public. We affirm.

## I. FACTS

Herron was charged with rape in the first degree while armed with a deadly weapon for sexually assaulting an acquaintance at knifepoint in his car. Roughly a week and a half before trial, the trial court held an initial readiness hearing where it informed the parties that it typically used a jury questionnaire in sexual assault cases

to discover sensitive information that might require questioning jurors individually. The court explained that in light of recent appellate court decisions, the practice of questioning jurors in chambers conflicted with Herron's public trial right. Thus, the court stated that "if there is any objection, I can't -- follow that procedure--." 1 Verbatim Report of Proceedings (VRP) at 69 (June 8, 2007). Defense counsel indicated, "We certainly don't object to that." *Id.*

The prosecuting attorney advised that Herron would need to affirmatively waive his right to a public trial on the record in order to question jurors in chambers. Alternatively, the prosecuting attorney suggested that the court could question individual jurors in a public setting with the other jurors waiting in a separate room. Defense counsel responded that he would not object and that "if we're looking for an affirmative waiver of a public examination of these individual jurors, Mr. Herron and I are present, we're certainly willing to waive that. . . . I think that's going to bear far more fruit than just simply a voir dire situation." *Id.* at 70.

At this point, the court inquired whether Herron understood the conversation and Herron replied that he did, expressly agreeing with the idea of conducting individual voir dire in the privacy of the judge's chambers. The court again explained the procedure and the rationale behind questioning certain jurors in chambers about their experience with sexual assault, ultimately advising Herron that whether jurors would be questioned in chambers or in open court was "pretty much up to you." *Id.*

at 72. The court declined to make a decision at that hearing and instructed Herron to further discuss the matter with his attorney.

At a pretrial hearing the following week, the court revisited the issue. Defense counsel advised the court that he had discussed the matter with Herron, who was willing to waive his right to a public trial in order to question certain jurors privately in chambers. The court then engaged in an extensive colloquy with Herron.

> THE COURT: All right. Mr. Herron, you understand you have a right to a public trial, where no one other than perhaps the witnesses are excluded from the courtroom, and where -- when the jury questioning takes place, you have a right to have anybody that wants to be here present for that process. Do you understand that fully?
>
> DEFENDANT: Yes.
>
> THE COURT: And by the same token, if you want to waive that right so that jurors will know that if they respond positively to some of these questions about things like have they ever been accused of a sex offense or been a victim of a sex offense or an unwanted sexual touching, have a close friend or family member -- we discussed last week, very often individuals are very reluctant to disclose those things, and particularly to disclose those things if they know they're going to be talked about in front of, well, for instance, 50 other jurors and other members of the public.
>
> DEFENDANT: Yes, sir.

1 VRP at 104-05 (June 15, 2007). The court then reiterated that the decision was completely up to Herron. Herron expressed that he preferred to question these jurors in chambers. The court then verified whether Herron had spoken to his counsel about the matter, and Herron assured the court that he had. The court again asked Herron

if he was sure that he wanted to proceed with the closure, and Herron again responded that he was.

At this point, the court turned to the prosecuting attorney for input, who suggested that Herron be given the option of having jurors interviewed on sensitive topics in an open setting but away from other jurors, "in an atmosphere that is open to the public, so it would comport with the defendant's right to a public trial." *Id.* at 106. The court presented this option to Herron, but Herron again stated that he preferred to "have it done not in public" to avoid jurors from being "influenced by other people." *Id.* at 108.

Based on these extensive colloquies, the trial court found that Herron made a knowing, voluntary, and intelligent waiver of his public trial right. Defense counsel then stated that Herron would be willing to sign a written waiver to that effect, but it does not appear that one was ever executed.

Three days later, the court began voir dire. The parties met briefly in chambers to decide which jurors would require individual questioning based on their responses to juror questionnaires. The court then called these jurors into chambers, and all parties participated in the questioning. Four jurors were excused for cause as a result of the individual juror questioning.

A jury was eventually empaneled, and Herron was found guilty of first degree rape while armed with a deadly weapon. The Court of Appeals affirmed Herron's

conviction. *State v. Herron*, 177 Wn. App. 96, 318 P.3d 281 (2013). We granted

review. *State v. Herron*, 182 Wn.2d 1001, 342 P.3d 326 (2015).

## II. ISSUES

1.     Did Herron waive his right to a public trial?

2.     Does Herron have standing to assert the general public's right to the open administration of justice?

## III. ANALYSIS

Article I, section 22 of the Washington Constitution guarantees a criminal

defendant the right to a public trial. This public trial right extends to the questioning

of individual jurors in chambers. *State v. Momah*, 167 Wn.2d 140, 151-52, 217 P.3d

321 (2009). Before a courtroom may be closed, the trial court must engage in a five-

factor analysis commonly referred to as the *Bone-Club* analysis. *State v. Bone-Club*,

128 Wn.2d 254, 259-60, 906 P.2d 325 (1995).

It is undisputed that the courtroom here was closed when individual jurors

were questioned in chambers. Moreover, the record indicates that the trial court did

not expressly engage in a *Bone-Club* analysis. The resolution of this case thus

depends on whether Herron validly waived his public trial right and, if so, whether

Herron may then assert standing on behalf of the general public.[1]

---

[1]We typically engage in a three-step analysis to determine whether there has been a violation of the public trial right. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). But the issue before us now is not whether there has been a violation of the public trial right but, rather, whether Herron waived his ability to assert such a violation on appeal.

A.    Herron knowingly, voluntarily, and intelligently waived his public trial right

We review whether a defendant waived a constitutional right de novo. *State v. Robinson*, 171 Wn.2d 292, 301, 253 P.3d 84 (2011). In general, the waiver of a constitutional right must be made knowingly, voluntarily, and intelligently. *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). But waivers of different constitutional rights meet this standard in different ways. "The validity of any waiver of a constitutional right, as well as the inquiry required by the court to establish waiver, will depend on the circumstances of each case." *State v. Stegall*, 124 Wn.2d 719, 725, 881 P.2d 979 (1994).

Turning to our public trial jurisprudence, two relevant principles emerge and define the contours of a valid waiver. First, mere silence is not sufficient to constitute waiver. *State v. Wise*, 176 Wn.2d 1, 15, 288 P.3d 1113 (2012) (defendant does not waive right to a public trial by failing to object). Rather, the defendant must be provided with a meaningful opportunity to object. For instance, in *Bone-Club*, 128 Wn.2d at 261, we held that the trial court's "summary closure" deprived the defendant of a meaningful opportunity to object. We stated that "an opportunity to object holds 'no practical meaning' unless the court informs potential objectors of the nature of the asserted interests." *Id.* (quoting *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 39, 640 P.2d 716 (1982)). We similarly acknowledged in *State v. Easterling*, 157 Wn.2d 167, 176 n.8, 137 P.3d 825 (2006), that a defendant does not

waive his ability to challenge an improper closure on appeal by failing to lodge a contemporaneous objection. Notably, we faulted the trial court for failing to affirmatively provide the defendant with an opportunity to object. *Id.*

Second, a knowing, voluntary, and intelligent waiver of the public trial right would not require on-the-record advice as to the consequences of a waiver but, rather, may be obtained through "an affirmative and unequivocal personal expression of waiver" that the defendant understands his right and voluntarily chooses to waive it. *State v. Frawley*, 181 Wn.2d 452, 461-62, 334 P.3d 1022 (2014) (plurality opinion). This may be achieved through a written waiver or "an equivalent colloquy that satisfies this standard." *Id.* at 462.

While these factors are not exhaustive, they permit us to resolve the case before us. There may be other factors in any given case that would establish that a waiver was or was not knowing, voluntary, and intelligent. We must address those factors as they arise. *Stegall*, 124 Wn.2d at 725 (validity of waiver "will depend on the circumstances of each case").

It is readily apparent that this case does not present an instance of waiver by silence. Rather, the trial court provided Herron with several meaningful opportunities to object. Roughly a week and a half before trial, the court advised Herron that it would not question individual jurors in chambers if Herron objected and the State presented an alternative to closure. Although both defense counsel and

Herron related that they preferred to have individual juror questioning conducted in chambers, the trial court instructed Herron to discuss the issue further with defense counsel and postponed any decision. One week later, the court revisited the topic again and stated to Herron that "it is totally your decision as to how [voir dire] is handled" and again provided Herron with an alternative option to closure. 1 VRP at 105 (June 15, 2007). Herron had several meaningful opportunities to object but did not do so.

Rather than objecting, the record reflects that Herron affirmatively and unequivocally waived his right to a public trial. The trial court advised Herron of his right to a public trial on several occasions. In response, Herron consistently and repeatedly stated that he waived his public trial right in order to examine prospective jurors about sensitive matters in chambers.[2] He explained that he preferred jurors "not be influenced by other people" and that in-chambers questioning "would be more appropriate." *Id.* at 108. Defense counsel agreed that "an examination in private in your chambers" would "bear far more fruit than just simply a voir dire situation." 1 VRP at 70 (June 8, 2007). Herron also expressly rejected an alternative to closure, favoring individual questioning of jurors in chambers instead. The trial

---

[2]This case presents a very clear example of a public trial waiver due in part to the sheer repetition by which Herron expressed his desire to waive his public trial right. We note that a waiver may be valid without the same degree of repetition that exists in this case; however, we must analyze every instance of waiver on a case-by-case basis. *Stegall*, 124 Wn.2d at 725.

court eventually found that Herron made a knowing, voluntary, and intelligent waiver based on these extensive colloquies from two separate hearings. Defense counsel even indicated that Herron was "willing to sign a written waiver to that effect as well." *Id.* at 109. Under these facts, we agree with both the trial court and the Court of Appeals and hold that Herron made a knowing, voluntary, and intelligent waiver.[3]

B.     Herron does not have standing to assert the general public's right to the open administration of justice

Article I, section 10 guarantees the open administration of justice without reference to any individual, stating simply that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This provision thus permits a member of the general public to demand access to judicial proceedings. *Cohen v. Everett City Council*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975).

Having waived his own individual right to a public trial, Herron now attempts to assert the general public's right to the open administration of justice. The Court of Appeals held that Herron did not have standing as a third party to assert the rights

---

[3]Herron argues that the trial court exceeded the scope of the waiver by holding an in-chambers discussion with the parties regarding which jurors required individual questioning. We need not reach that issue in this case because Herron waived his right to a public trial in order to conduct individual questioning of jurors. Deciding which jurors required individual questioning clearly falls within the scope of Herron's waiver. Indeed, had Herron not sought to perform individual questioning of jurors, the trial court would never have been required to decide which jurors required individual questioning in the first place, and the challenged discussion would not have occurred.

of the general public. *Herron*, 177 Wn. App. at 107-08. To determine whether Herron had third party standing, the court applied the three-part test announced by the United States Supreme Court in *Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). First, the litigant must show that that he or she "suffered an 'injury in fact,'" thus giving him or her a "'sufficiently concrete interest' in the outcome of the issue in dispute." *Id.* at 411 (quoting *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976)). Second, "the litigant must have a close relation to the third party." *Id.* Finally, "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.*

Here, the Court of Appeals correctly determined that Herron did not suffer any injury in fact from the closure. *Herron*, 177 Wn. App. at 107. Contrary to suffering an injury, Herron actually benefited from the in-chambers questioning because he was better able to obtain a fair and impartial jury. At one point, defense counsel thanked one potential juror for his honesty and candor, explaining, "That's exactly why we're . . . going through this process." 1-A VRP at 93 (June 18, 2007). Another juror disclosed for the first time in her life that she had been molested by an uncle. Although the judge overruled the defense's challenge to this juror, the defense later used a peremptory challenge to excuse her. Eventually, four other jurors were excused for cause based on the individual questioning. There was no injury.

Turning to the second factor, Herron cannot show any close relationship with the public at large. Herron argues that he has a special relationship with the public because he shares an interest in the perception of fairness and integrity of the prosecution. However, as the Court of Appeals acknowledged, Herron's interest here was actually inimical to the public's interest. *Herron*, 177 Wn. App. at 107 n.10. Herron sought to obtain a closed proceeding so that jurors could candidly discuss their views on sexual assault, thus better allowing Herron to discover and remove biased jurors. This contrasts with the public's interest to have access to jury selection. Thus, there is no "congruence of interests" that would sustain a finding of a special relationship. *Powers*, 499 U.S. at 414.

Finally, there is no reason to believe that the public could not have asserted its own interests in this case. Herron argues that the trial court failed to provide notice to the public before closing the court, depriving the public from asserting its own interests. But the trial court and parties discussed the closure in open court on two separate days. Thus, members of the press or public had two separate occasions to voice any concern. Moreover, the press has regularly asserted its right to the open administration of justice. *See, e.g.*, *Ishikawa*, 97 Wn.2d at 32; *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d 51, 52-53, 615 P.2d 440 (1980); *State ex rel. Superior Court v. Sperry*, 79 Wn.2d 69, 72-73, 483 P.2d 608 (1971). So have individual members of the general public. *See, e.g.*, *State v. Richardson*, 177 Wn.2d 351, 357, 302 P.3d

11

156 (2013); *Bennett v. Smith Bundy Berman Britton, PS*, 176 Wn.2d 303, 307, 291 P.3d 886 (2013). The trial court did not impose any barriers that would prevent a member of the press or public from asserting his or her rights. Herron fails to meet any of the three factors from *Powers* and thus cannot assert the rights of the general public.

To be clear, as a criminal defendant, Herron had standing to raise his own individual right to a public trial under article I, section 22. And, as a member of the public, he had a right to demand the open administration of justice under article I, section 10. But when Herron waived the right to an open courtroom, he waived it for all purposes. And he eagerly waived that right here. Fairness, finality, and common sense dictate that a defendant should not be able to assert the general public's right to the open administration of justice after waiving and causing the very violation of which he now complains.

## IV. CONCLUSION

Herron waived his right to a public trial, and Herron lacks standing to assert the general public's right to the open administration of justice. We affirm the Court of Appeals.

_____
Fairhurst, J.

WE CONCUR:

_____
Madsen, C. J.

_____
Johnson, J.

_____
Owens, J.

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Yu, J.

13