IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33073-7-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 33074-5-III) |
| | ) | |
| v. | ) | |
| | ) | |
| RALPH E. WHITLOCK, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | PUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID R. JOHNSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Ralph Whitlock and David Johnson appeal their

bench trial convictions for first degree burglary and first degree robbery, including a

firearm enhancement. We asked for supplemental briefing on whether the trial court's

decision to recess court and go in chambers to hear argument and rule on an evidentiary

objection violated the defendants' public trial rights. We hold that the defendants' public

trial rights were implicated by the in-chambers evidentiary argument and ruling. We further hold that the in-chambers argument and ruling was a closure, and the trial court's failure to explicitly or implicitly weigh the *Bone Club*[1] factors constitutes structural error that is presumed prejudicial. We, therefore, reverse the convictions and remand for a new trial.

## FACTS

In June 2014, Mr. Whitlock and Mr. Johnson entered Tonya Routt's house, refused to leave when requested, and used a gun as a threat of force to obtain and depart with personal property belonging to Ms. Routt. The State charged the men with first degree burglary and first degree robbery, including firearm enhancements. The cases were consolidated and tried to the bench.

During trial, counsel for Mr. Johnson attempted to cross-examine a witness on whether she had previously served as a confidential informant. The State objected and requested a sidebar. The trial court chose instead to recess the trial and discuss the evidentiary objection with counsel in chambers. Neither defendant objected to this procedure. Trial thereafter resumed and counsel for Mr. Johnson asked the witness questions not related to the issue discussed in chambers.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

2

At the end of the morning testimony, the trial court asked each attorney to place on the record what was discussed earlier in chambers. The State mentioned its concerns about requiring the witness to disclose whether she had served as an informant, explained why it believed the line of questioning was not relevant, and summarized the trial court's ruling made in chambers. Counsel for Mr. Johnson mentioned why he believed the line of questioning was relevant and added that the trial court's ruling allowed him to explore the subject through other witnesses. Counsel for Mr. Whitlock agreed with the prior summaries and also added that the trial court discussed other impeachment approaches in chambers.

After hearing all the evidence and closing arguments, the trial court found the defendants guilty of first degree burglary and first degree robbery, including the charged firearm enhancement. The defendants filed separate timely appeals that we consolidated.

Our review of the briefs and the record resulted in us directing the parties to submit briefing on the obvious but overlooked public trial issue. Because that issue is dispositive, we do not address the defendants' other contentions.

ANALYSIS

A.    CONSIDERATION OF PUBLIC TRIAL ISSUE TO PROPERLY DECIDE CASE

RAP 12.1(a) sets forth the general rule that an appellate court will decide the case

only on the basis of issues set forth by the parties in their briefs. RAP 12.1(b) sets forth

the exception:

> If the appellate court concludes that an issue not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.

There are two reasons, consistent with the above standard, to address the public

trial issue. First and foremost, the public trial right is so weighty that its violation is

considered structural error. *State v. Wise*, 176 Wn.2d 1, 13, 288 P.3d 1113 (2012).

"Where there is structural error 'a criminal trial cannot reliably serve its function as a

vehicle for determination of guilt or innocence, and no criminal punishment may be

regarded as fundamentally fair.'" *Id.* at 14 (internal quotation marks omitted) (quoting

*Arizona v. Fulminate*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)

(Rehnquist, C.J., majority opinion)). Second, the in-chambers conference occurred in

December 2014, so the trial court had the benefit of *Wise*, which forewarns trial courts

against conducting any portion of the trial in chambers.

B.     PUBLIC TRIAL RIGHT

Defendants have a constitutional right to a public trial. U.S. CONST. amend. VI;

CONST. art. I, § 22. A violation of the public trial right can be raised for the first time on

appeal. *Wise*, 176 Wn.2d at 9. Failure to object at trial does not constitute a waiver of a

4

defendant's public trial right. *State v. Shearer*, 181 Wn.2d 564, 569, 334 P.3d 1078

(2014). Violation of a defendant's public trial right is a question of law reviewed de

novo. *Wise*, 176 Wn.2d at 9 (quoting *State v. Easterling*, 157 Wn.2d 167, 173-74, 137

P.3d 825 (2006)).

The right to a public trial is not absolute. *Shearer*, 181 Wn.2d at 569. Competing

rights and interests often require trial courts to limit public access to a trial. *Id.* Trial

courts assess these competing interests by using the five factor analysis articulated in

*Bone-Club*.[2] A trial court must consider the five *Bone-Club* factors on the record before

closing the courtroom. *Wise*, 176 Wn.2d at 10. Closing the courtroom without

considering the *Bone-Club* factors is structural error and is presumed to be prejudicial.

---

[2] The five factors are:
> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat to that right.
>
> "2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> "3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> "4. The court must weigh the competing interests of the proponent of closure and the public.
>
> "5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

No. 33073-7-III; 33074-5-III
*State v. Whitlock; State v. Johnson*

*Shearer*, 181 Wn.2d at 569.

The first step in analyzing whether a defendant's right to a public trial has been violated is to inquire whether the court proceeding implicated the right. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). If the public trial right is implicated, the second step inquires whether there was a closure, and the third step inquires whether the closure was justified. *Id.* (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring).

### 1.   *Does the proceeding implicate the public trial right?*

The Washington Supreme Court has adopted the "experience and logic" test developed by the United States Supreme Court to determine if a court proceeding implicates the public trial right. *Sublett*, 176 Wn.2d at 72-75. The "experience prong" asks "'whether the place and process have historically been open to the press and general public.'" *Id.* at 73 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The "logic prong" asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enter.*, 478 U.S. at 8). If both questions are answered yes, then the court proceeding implicates the public trial right. *Id.* The Washington Supreme Court has held that sidebar conferences do not implicate the public trial right. *Smith*, 181 Wn.2d at 511.

6

### a. Smith *is not dispositive*

The State asserts that *Smith* controls the outcome of this case. In *Smith*, the trial court conducted 13 sidebar conferences during the jury trial to consider evidentiary objections. *Id.* at 512. The Cowlitz County courtroom has a peculiar layout that makes it difficult to have a traditional sidebar discussion outside of the jury's hearing. *Id.* To prevent the jury from hearing potentially prejudicial information, sidebars occur in a hallway outside of the courtroom. *Id.* The sidebar conference is videotaped and recorded and is, thus, part of the trial court record. *Id.* The *Smith* court applied the "experience and logic" test and held that sidebar conferences do not implicate the defendant's public trial right. *Id.* at 515-19. Especially pertinent to this case, the *Smith* court held, "a sidebar conference, *even if held outside the courtroom*, does not implicate Washington's public trial right." *Id.* at 519 (emphasis added).

But reaching the conclusion urged by the State is not so simple. The *Smith* court explicitly limited its holdings to sidebars in fact.

> We caution that merely characterizing something as a "sidebar" does not make it so. *To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record.* Whether the event in question is actually a sidebar is part of the experience prong inquiry . . . .

*Id.* at 516 n.10 (emphasis added).

7

We determine that the evidentiary conference in this case was not a sidebar as

contemplated by the *Smith* court. The *Smith* court explained that a sidebar is a method

used by a trial judge to hear evidentiary objections so to avoid delay caused by sending

the jury to and from the jury room, often located some distance from the courtroom. *Id.* at

515 (quoting *In re Det. of Ticeson*, 159 Wn. App. 374, 386 n.38, 246 P.3d 550 (2011)).

The hallway conference in *Smith* was a sidebar because it was the most expedient method

for resolving evidentiary objections, given the courtroom's peculiar layout that allowed a

jury to hear a traditional sidebar.

But here, the trial was to the bench. There was no expediency justification for

holding an evidentiary conference outside the courtroom. Rather, the trial court's

decision to recess court and hold an in-chambers argument and ruling actually disrupted

the expedient flow of the trial.

Moreover, the in-chambers argument and ruling were neither recorded nor

promptly memorialized on the record. Rather, quite some time passed between when the

in-chambers argument and ruling concluded and when the in-chambers argument and

ruling were placed on the record.[3] We conclude that *Smith* does not control the outcome

---

[3] The Report of Proceedings (RP) does not reflect the time the in-chambers
hearing concluded and the time the argument and ruling were placed on the record. But
we note that the former occurred at RP 339, and the latter occurred at RP 424-27.

of this case.

### b. *Application of the "experience and logic" test*

The experience prong asks "'whether the place and process have historically been open to the press and general public.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter.*, 478 U.S. at 8). Evidentiary arguments and rulings have always occurred in open court, although sometimes in hushed sidebar tones. There rarely are good reasons for private evidentiary conferences, absent compelling factors that could be weighed in a *Bone-Club* analysis. Any other reason to conduct a private evidentiary conference would be based on mere convenience and, thus, would not be appropriate. *State v. Frawley*, 181 Wn.2d 452, 460, 334 P.3d 1022 (2014).

The logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter.*, 478 U.S. at 8). *Smith* held that the logic prong did not implicate the defendant's public trial rights because (1) forcing a jury in and out of court every time an evidentiary objection is made would be problematic, (2) traditional sidebars did not invoke concerns of perjury, transparency, or the appearance of fairness, especially where the communications were contemporaneously memorialized and recorded, and (3) evidentiary rulings are the province of the trial court, and laypersons do not

9

understand the intricate hearsay rules. *Smith*, 181 Wn.2d at 518-19. Here, however, jury

expediency was not a concern, nor was this a traditional sidebar, nor was the discussion

and ruling contemporaneously memorialized or recorded.

Hearing and ruling on an evidentiary objection in chambers is different than

hearing and ruling on an evidentiary objection in open court—even in hushed sidebar

voices. In chambers, the public cannot watch to ensure that the adversarial process is in

fact adversarial. Especially here, where no jury was present and there was no recording

of what was said in chambers, logic dictates there is little to gain and much to lose by

excluding the public from an evidentiary conference. We hold that hearing and ruling on

an evidentiary objection in chambers implicates the defendants' public trial right.

2. *Was there a closure?*

When a trial court conducts a court proceeding in chambers, thus causing the

public to be excluded, there is a closure. *Frawley*, 181 Wn.2d at 459-60; *Wise*, 176

Wn.2d at 11-13.

3. *Was the closure justified?*

"A closure unaccompanied by a *Bone-Club* analysis on the record will almost

never be considered justified." *Smith*, 181 Wn.2d at 520. "When a court fails to conduct

an express *Bone-Club* analysis, a reviewing court may examine the record to determine if

10

the trial court effectively weighed the defendant's public trial right against other compelling interests." *Id.* Here, the trial court did not explicitly or implicitly weigh the *Bone-Club* factors. Instead, the State asked for a sidebar and the trial court chose to address the evidentiary objection in chambers. We conclude the closure was not justified.

## CONCLUSION

Hearing argument and ruling on an evidentiary objection in chambers implicates a defendant's public trial right. Moreover, conducting such a conference in chambers constitutes a closure. The trial court's decision to hear argument and rule on an evidentiary objection in chambers without explicitly or implicitly weighing the *Bone-Club* factors is, by binding precedent, structural error and is presumed prejudicial. We, therefore, are constrained to reverse both convictions and remand for a new trial.

Reversed and remanded.

Lawrence-Berrey, A.C.J.

I CONCUR:

Pennell, J.

11

No. 33073-7-III; 33074-5-III

PENNELL, J. (concurrence) — I join the majority opinion in full. I write separately to emphasize additional circumstances supporting our conclusion that the in-chambers conference implicated the defendants' public trial rights.

When it comes to mundane legal arguments, the use of an expedient such as a sidebar or in-chambers conference is of no moment. The "experience prong" of the public trial test is not met because, historically, the public has had little involvement in such matters. *See State v. Smith*, 181 Wn.2d 508, 516-18, 334 P.3d 1049 (2014). Resolving technical legal issues outside of direct public view or earshot does not impair public oversight of court proceedings or deny the public the ability to weigh a defendant's guilt or innocence. *Id.* The "logic prong" also fails because discussions of evidentiary rules and similar matters often appear to the public as "a foreign language." *Id.* at 519. There is generally nothing to gain by including the public in these discussions while they are taking place. *Id.*

The in-chambers arguments conducted in this case were different. Counsel did not merely address technical legal issues. The subject was the scope of cross-examination. Specifically, whether defense counsel could cross-examine the State's witness regarding prior cooperation with law enforcement. The discussion involved significant factual proffers. It held constitutional magnitude. *See Davis v. Alaska*, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (constitutional right to cross-examine on bias created by relationship between witness and the State). Unlike what may be true in the often arcane context of hearsay or statutory construction, the public can readily

understand the idea that a witness may be biased due to a relationship with law enforcement. Moreover, the public has a strong interest in assessing the significance of any such relationship and whether the defendant has been permitted to challenge the State's evidence and thereby "discourage perjury." *State v. Sublett*, 176 Wn.2d 58, 72, 292 P.3d 715 (2012); *see also Walker v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

Also important to the public trial analysis is the fact that the in-chambers conference was not recorded. Contrary to the dissent's assertions, the existence of simultaneous recording is an important factor in the Supreme Court's public trial jurisprudence. *Smith*, 181 Wn.2d at 518. Under the experience prong, simultaneous recording undercuts a public trial claim because "[a]ny inquiring member of the public can discover exactly what happened." *Id*. Under the logic prong, simultaneous recording means "[t]he public was not prevented from knowing what occurred." *Id*. I agree with my dissenting colleague that use of simultaneous recording is not sufficient to comport with the public trial requirement. But it does not therefore stand to reason that simultaneous recording is unnecessary, let alone unimportant.

The use of simultaneous recordings goes a long way toward ensuring public access to court proceedings. When the subject matter of a proceeding is largely legal, simultaneous recording ensures substantially the same kind of public access as what is available when a legal matter is decided in writing. Judges undoubtedly can resolve

2

numerous legal issues in writing, through motion practice, without implicating the public trial right. It stands to reason the same is true for oral decisions. *See Sublett*, 176 Wn.2d at 77 (public trial not implicated when judge substitutes oral presentation for what would normally occur in writing). So long as there is a recording, the public's access to oral decisions is largely preserved.

No simultaneous recording occurred here. The fact that the attorneys placed their recollections of what happened on the record was an insufficient substitute. The human mind does not operate like a video or audio recorder. *State v. Henderson*, 208 N.J. 208, 245, 27 A.3d 872 (2011). Information offered through memory can be contaminated by an array of psychological and perceptive processes. *Id.* Relying on human memory to accurately recount what happened during a court proceeding is inadequate. More importantly, there can be little public confidence in a system where justice is administered privately, behind a judge's closed doors. The public's ability to independently scrutinize court proceedings depends on access to complete and accurate information. Access is denied and independent review is thwarted when the public is forced to rely on the assurances from the bench and bar that nothing untoward has happened. The constitutional guarantee of open administration of justice requires more.

Had the trial court followed proper closure procedure, it may well have been possible to narrowly restrict the public's access to information. *See State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). But because the court never recognized

3

No. 33073-7-III; 33074-5-III
*State v. Whitlock; State v. Johnson*

the defendants' public trial rights, the required analysis and narrowing did not occur. Our

Supreme Court has treated this as the type of error that will warrant reversal, even when

not preserved by way of objection. *Id.* at 261-62. Given this circumstance, I concur in

the decision to reverse the defendants' convictions.

_____
Pennell, J.

4

33073-7-III; 33074-5-III

KORSMO, J. (dissenting) — The subject matter of the chambers conference involved legal issues typically addressed at sidebar and, thus, the trial court's closure of the courtroom did not amount to a public trial violation. Indeed, that is probably why the parties did not even raise this claim and left it to this court to, quite mistakenly, raise the issue. *Smith* controls here.[1] For two reasons, I respectfully dissent.

While most bench trials will seldom present matters that call for sidebar conferences, let alone raise issues that require retreat to chambers, this case presents a clear exception to that norm. The defense was trying to intimidate the witness concerning her past cooperation with the police and the prosecutor understandably sought to have the judge resolve the matter out of earshot of the witness. When the objection appeared to be rather involved, as this one ultimately was, the trial court aptly concluded that it was not a matter easily handled by whispering at the side of the bench. In retrospect, it might have been better to have sent the witness out in the hallway while the argument was heard in the courtroom, but hearing the matter in chambers did not violate article I, § 22. The experience and logic test demonstrates that the public trial right was not implicated in this case.

---

[1] *State v. Smith*, 181 Wn.2d 508, 334 P.3d 1049 (2014).

The first, and controlling, reason for this dissent is *Smith*, a case that the majority distinguishes on irrelevant bases. There the court concluded that sidebar conferences held in the hallway outside the courtroom did not violate the defendant's public trial rights. 181 Wn.2d at 513-19. The court announced a three-part test for adjudging public trial claims: (1) use the experience and logic test to see if the public trial right was implicated, (2) decide if there is a closure, and (3) determine if the closure was justified. *Id.* at 513-14. If the public trial right is not implicated, there is no reason to determine whether a closure occurred, let alone decide whether it was justified. *Id.* at 519-21.

In *Smith*, the court concluded that the sidebar conferences outside the courtroom did not implicate the public trial right. First, the experience prong did not support a public trial right. Sidebar conferences are traditionally held outside the hearing of the public because they generally must be outside the hearing of the jury, and there was no evidence that the public ever participated in sidebar conferences. *Id.* at 515-16. The logic prong likewise did not support finding a public trial right. The public has no input in legal rulings. *Id.* at 518-19. "Nothing is added to the functioning of the trial by insisting that the defendant or public be present during sidebar or in-chambers conferences." *Id.* at 519.

Despite this clear resolution of the argument, the majority attempts to avoid it by focusing on the fact that this was a bench trial, thus rendering public viewing of legal arguments more amenable since there would be no jury to inconvenience. For a couple

2

of reasons, this observation is meaningless. First, not all sidebar conferences are about keeping information from the jury. Some involve keeping information from the witness, as in this case. Many counsel seeking guidance in limine want to assure the propriety of their questions before asking them in public—and they also do not want to tip the witness off as to what is coming next. Second, and more importantly, the public trial right is concerned with what the public brings to the decision-making process, not the curiosity of the audience. That the public can see and hear more legal arguments in a bench trial does not define the public trial right. Indeed, it would be curious if the defendant's exercise of the right to a jury trial somehow diminishes the defendant's article I, § 22 right to a public trial. But, that appears to be the implication of the majority's argument—there is a greater public right to hear legal argument in a bench trial than during a jury trial.

*Smith* tells us that a "sidebar" is defined by what happens during the conference, not where the conference takes place. The majority is unduly squeamish about the fact that this sidebar discussion related to the questioning of the witness took place in chambers rather than in the courtroom. While chambers meetings have often been a source of public trial violations over the last decade, the location does not itself demonstrate a violation of the constitution. The public had no role in determining which questions could be asked and which could not be asked. As in *Smith*, these were legal questions for the trial judge to answer. The experience and logic test, as applied in *Smith*

3

to the same type[2] of evidentiary proceedings involved in this case, dictate that there was no violation of the public trial right.

The majority also, quite curiously, seems to be concerned that the chambers discussion was not recorded. However, it cites no authority for the proposition that any sidebar conference, or any chambers conference, needs to be recorded. It notes that the sidebar conference in *Smith* was recorded and distinguishes that case from this one on that basis. Why it should do so is a mystery.[3] Whether a sidebar conference is reported or not typically is dependent on the location of the sidebar with respect to the court

---

[2] According to Justice Owens' dissent, the sidebars at issue in *Smith* included discussions of "the extent of questioning allowed with certain witnesses" and "rulings regarding the admissibility of evidence and testimony." 181 Wn.2d at 538.

[3] The concurrence goes astray in its defense of recording some sidebar hearings by focusing on public access to the recordings and noting that the "guarantee of open administration of justice requires more" than reconstruction of a chambers hearing. This statement indicates the majority's focus on article I, § 10 ("justice in all cases shall be openly administered") instead of the proper focus on the defendant's article I, § 22 right to a "public trial." This case comes to us on the appeal of the defendants who are now, in response to this court's invitation, belatedly asserting their article I, § 22 right to a public trial. They lack standing to assert the public's article I, § 10 interest in the proceedings. *State v. Herron*, 183 Wn.2d 737, 747-48, 356 P.3d 709 (2015). Instead, the question of whether or not the public trial right was violated is assessed by the experience and logic test, *Smith*, 181 Wn.2d at 518, and *State v. Sublett*, 176 Wn.2d 58, 73, 292 P.3d 715 (2012), unadorned by considerations of whether the public had a right to know what went on at a sidebar hearing. Far from being critical to the holding, the statements in *Smith*, 181 Wn.2d at 518, noting that the recording of the sidebar conferences satisfied any public interest in those aspects of the trial, did not add a new factor to the experience and logic test. They were used to distinguish a Fifth Circuit case argued by the defendant. *Id.* at 517-18. If contemporaneous recording is required to ensure that a sidebar conference was properly limited to legal matters, our court will tell us. They have not yet done so.

4

reporter or the recording system, matters of courtroom design that hold no constitutional significance of which I am aware. I strongly suspect that the majority would reach the same result even if the chambers conference had been reported. However, just as reporting a chambers conference does not prevent a public trial violation, *State v. Effinger*, 194 Wn. App. 554, 375 P.3d 701 (2016) (citing cases), failing to report a chambers conference does not create a public trial violation. Instead, it is the substance of the conference that determines whether the public trial right attached or not.

While *Smith* is dispositive here, there is a second reason that the majority's approach is suspect. That reason is that article IV, § 23 of our constitution, a provision enacted at the same time as article I, §§ 10 and 22, recognized and enshrined in our constitution the judge's power to act in chambers. The provision reads:

> SECTION 23 COURT COMMISSIONERS. There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, *who shall have authority to perform like duties as a judge of the superior court at chambers*, subject to revision by such judge, to take depositions and to *perform such other business connected with the administration of justice* as may be prescribed by law.

(Emphasis added.)

This provision and its history was discussed at some length in our opinion in *In re Detention of Reyes*, 176 Wn. App. 821, 315 P.3d 532 (2013), *aff'd*, 184 Wn.2d 340 (2015). There we summed up article IV, § 23 as follows:

> Washington thus recognized at the time of adopting its constitution that judges had authority to conduct business, other than trial, outside of the public courtroom. However, that authority was still subject to the command that it be "administered openly." Since the same constitutional convention produced both provisions, the constitution appears to envision that judges can perform their activities "openly" without all activities taking place in public.

*Id.* at 834.

As discussed in *Reyes*, the meaning of this provision is less than clear and has varied, even in the early years of statehood. It should, however, serve as a caution against viewing negatively everything that occurs in chambers. We should not interpret the public trial right in a manner that negates another constitutional provision.

The defendants have not established that their public trial rights were violated. Indeed, they have not shown that the right to a public trial attached to the legal discussion at issue here. This case is controlled by *Smith* and, therefore, this issue is without merit. I would affirm.

Korsmo, J.

6