Korsmo, J.
¶32 (dissenting) — The subject matter of the chambers conference involved legal issues typically addressed at sidebar and, thus, the trial court’s closure of the courtroom did not amount to a public trial violation. Indeed, that is probably why the parties did not even raise this claim and left it to this court to, quite mistakenly, raise the issue. Smith controls here.[4] For two reasons, I respectfully dissent.
¶33 While most bench trials will seldom present matters that call for sidebar conferences, let alone raise issues that require retreat to chambers, this case presents a clear exception to that norm. The defense was trying to intimidate the witness concerning her past cooperation with the police, and the prosecutor understandably sought to have the judge resolve the matter out of earshot of the witness. When the objection appeared to be rather involved, as this one ultimately was, the trial court aptly concluded that it was not a matter easily handled by whispering at the side *759 of the bench. In retrospect, it might have been better to have sent the witness out in the hallway while the argument was heard in the courtroom, but hearing the matter in chambers did not violate Const, art. I, § 22. The experience and logic test demonstrates that the public trial right was not implicated in this case.
¶34 The first, and controlling, reason for this dissent is Smith, a case that the majority distinguishes on irrelevant bases. There the court concluded that sidebar conferences held in the hallway outside the courtroom did not violate the defendant’s public trial rights. 181 Wn.2d at 513-19. The court announced a three-part test for adjudging public trial claims: (1) use the experience and logic test to see if the public trial right was implicated, (2) decide if there is a closure, and (3) determine if the closure was justified. Id. at 513-14. If the public trial right is not implicated, there is no reason to determine whether a closure occurred, let alone decide whether it was justified. Id. at 519-21.
¶35 In Smith, the court concluded that the sidebar conferences outside the courtroom did not implicate the public trial right. First, the experience prong did not support a public trial right. Sidebar conferences are traditionally held outside the hearing of the public because they generally must be outside the hearing of the jury, and there was no evidence that the public ever participated in sidebar conferences. Id. at 515-16. The logic prong likewise did not support finding a public trial right. The public has no input in legal rulings. Id. at 518-19. “Nothing is added to the functioning of the trial by insisting that the defendant or public be present during sidebar or in-chambers conferences.” Id. at 519.
¶36 Despite this clear resolution of the argument, the majority attempts to avoid it by focusing on the fact that this was a bench trial, thus rendering public viewing of legal arguments more amenable since there would be no jury to inconvenience. For a couple of reasons, this observation is meaningless. First, not all sidebar conferences are *760 about keeping information from the jury. Some involve keeping information from the witness, as in this case. Many counsel seeking guidance in limine want to assure the propriety of their questions before asking them in public— and they also do not want to tip the witness off as to what is coming next. Second, and more importantly, the public trial right is concerned with what the public brings to the decision-making process, not the curiosity of the audience. That the public can see and hear more legal arguments in a bench trial does not define the public trial right. Indeed, it would be curious if the defendant’s exercise of the right to a jury trial somehow diminishes the defendant’s art. I, § 22 right to a public trial. But, that appears to be the implication of the majority’s argument—there is a greater public right to hear legal argument in a bench trial than during a jury trial.
¶37 Smith tells us that a “sidebar” is defined by what happens during the conference, not where the conference takes place. The majority is unduly squeamish about the fact that this sidebar discussion related to the questioning of the witness took place in chambers rather than in the courtroom. While chambers meetings have often been a source of public trial violations over the last decade, the location does not itself demonstrate a violation of the constitution. The public had no role in determining which questions could be asked and which could not be asked. As in Smith, these were legal questions for the trial judge to answer. The experience and logic test, as applied in Smith to the same type[5] of evidentiary proceedings involved in this case, dictate that there was no violation of the public trial right.
¶38 The majority also, quite curiously, seems to be concerned that the chambers discussion was not recorded. However, it cites no authority for the proposition that any *761 sidebar conference, or any chambers conference, needs to be recorded. It notes that the sidebar conference in Smith was recorded and distinguishes that case from this one on that basis. Why it should do so is a mystery.[6] Whether a sidebar conference is reported or not typically is dependent on the location of the sidebar with respect to the court reporter or the recording system, matters of courtroom design that hold no constitutional significance of which I am aware. I strongly suspect that the majority would reach the same result even if the chambers conference had been reported. However, just as reporting a chambers conference does not prevent a public trial violation, State v. Effinger, 194 Wn. App. 554, 563-64, 375 P.3d 701 (2016) (citing cases), failing to report a chambers conference does not create a public trial violation. Instead, it is the substance of the conference that determines whether the public trial right attached or not.
¶39 While Smith is dispositive here, there is a second reason that the majority’s approach is suspect. That reason is that art. IV, § 23 of our constitution, a provision enacted at the same time as art. I, §§ 10 and 22, recognized and *762 enshrined in our constitution the judge’s power to act in chambers. The provision reads:
SECTION 23 COURT COMMISSIONERS. There may be appointed in each county, by the judge of the superior court having jurisdiction therein, one or more court commissioners, not exceeding three in number, who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge, to take depositions and to perform such other business connected with the administration of justice as may be prescribed by law.
(Emphasis added.)
¶40 This provision and its history was discussed at some length in our opinion in In re Detention of Reyes, 176 Wn. App. 821, 315 P.3d 532 (2013), aff’d, 184 Wn.2d 340, 358 P.3d 394 (2015). There we summed up art. IV, § 23 as follows:
Washington thus recognized at the time of adopting its constitution that judges had authority to conduct business, other than trial, outside of the public courtroom. However, that authority was still subject to the command that it be “administered openly.” Since the same constitutional convention produced both provisions, the constitution appears to envision that judges can perform their activities “openly” without all activities taking place in public.
Id. at 834.
¶41 As discussed in Reyes, the meaning of this provision is less than clear and has varied, even in the early years of statehood. It should, however, serve as a caution against viewing negatively everything that occurs in chambers. We should not interpret the public trial right in a manner that negates another constitutional provision.
¶42 The defendants have not established that their public trial rights were violated. Indeed, they have not shown that the right to a public trial attached to the legal discussion at issue here. This case is controlled by Smith and, therefore, this issue is without merit. I would affirm.
Review granted at 187 Wn.2d 1002 (2017).

 State v. Smith, 181 Wn.2d 508, 334 P.3d 1049 (2014).

 According to Justice Owens’ dissent, the sidebars at issue in Smith included discussions of “the extent of questioning allowed with certain witnesses’’ and “rulings regarding the admissibility of evidence and testimony.’’ 181 Wn.2d at 538.

 The concurrence goes astray in its defense of recording some sidebar hearings by focusing on public access to the recordings and noting that the “guaranty of open administration of justice requires more’’ than reconstruction of a chambers hearing. Concurrence at 758. This statement indicates the majority’s focus on Const. art. I, § 10 (“justice in all cases shall be administered openly’’) instead of the proper focus on the defendant’s art. I, § 22 right to a “public trial.’’ This case comes to us on the appeal of the defendants who are now, in response to this court’s invitation, belatedly asserting their art. I, § 22 right to a public trial. They lack standing to assert the public’s art. I, § 10 interest in the proceedings. State v. Herron, 183 Wn.2d 737, 747-48, 356 P.3d 709 (2015). Instead, the question of whether or not the public trial right was violated is assessed by the experience and logic test, Smith, 181 Wn.2d at 518, and State v. Sublett, 176 Wn.2d 58, 73, 292 P.3d 715 (2012) (plurality opinion), unadorned by considerations of whether the public had a right to know what went on at a sidebar hearing. Par from being critical to the holding, the statements in Smith, 181 Wn.2d at 518, noting that the recording of the sidebar conferences satisfied any public interest in those aspects of the trial, did not add a new factor to the experience and logic test. They were used to distinguish a Fifth Circuit case argued by the defendant. Id. at 517-18. If contemporaneous recording is required to ensure that a sidebar conference was properly limited to legal matters, our court will tell us. They have not yet done so.